# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

CHARLES S. MEIER,

        Plaintiff,

vs.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

        Defendant.

No. 07-CV-0128-LRR

**ORDER**

---

## *TABLE OF CONTENTS*

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*II.*   *PRIOR PROCEEDINGS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*III.*  *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

*IV.*  *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
     *A.*   *Meier's Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
     *B.*   *Subjective Complaints* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
     *C.*   *Meier's Work History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
     *D.*   *Meier's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
     *E.*   *Meier's Medical History* . . . . . . . . . . . . . . . . . . . . . . . . . **7**
          *1.*   *Treating sources* . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
          *2.*   *Non-treating sources* . . . . . . . . . . . . . . . . . . . . . **10**
     *F.*   *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . . . . **11**

*V.*   *ALJ'S DECISION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

*VI.*  *MEIER'S OBJECTIONS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**
     *A.*   *Determination of Disability* . . . . . . . . . . . . . . . . . . . . . . . **14**
          *1.*   *Listing 1.04(A)* . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
          *2.*   *Listing 1.04(C)* . . . . . . . . . . . . . . . . . . . . . . . . . . **16**
          *3.*   *ALJ's failure to discuss Listings 1.04(A) and (C)* . . . . . . . . **16**
     *B.*   *Determination of Meier's RFC* . . . . . . . . . . . . . . . . . . . . . . **17**
          *1.*   *Undisputed inconsistencies in record* . . . . . . . . . . . . . . . . **18**
          *2.*   *Meier's substantive disputes with the ALJ's credibility*
              *findings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**

C.      *Consideration of Meier's Treating Sources* . . . . . . . . . . . . . . . . . **22**
D.      *Consideration of Dr. Schultes's Opinion*  . . . . . . . . . . . . . . . . . **24**
E.      *Meier's Past Relevant Work* . . . . . . . . . . . . . . . . . . . . . . . . . **25**

VII.   **DISPOSITION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **26**

## I.  INTRODUCTION

The matter before the court is Plaintiff Charles S. Meier's ("Meier") Complaint (docket no. 4) for judicial review of the Social Security Commissioner's ("Commissioner") decision to deny his application for Title II disability insurance benefits ("disability benefits").[1]

## II.  PRIOR PROCEEDINGS

On November 19, 2004, Meier filed an application for disability benefits ("Application"). In the Application, Meier alleged an inability to work since October 11, 2004. On March 8, 2005, the Commissioner denied the Application. On April 8, 2005, Meier filed a request for reconsideration. On May 24, 2005, Meier's request for reconsideration was denied. On July 6, 2005, Meier requested an evidentiary hearing before an administrative law judge. On November 6, 2006, administrative law judge George Gaffaney ("ALJ") held an evidentiary hearing ("Hearing"). At the Hearing, attorney Ruth Carter represented Meier. Meier and vocational expert Marian Jacobs ("Ms. Jacobs") testified at the Hearing.

On March 5, 2007, the ALJ denied Meier's request for disability benefits. On March 21, 2007, Meier filed a Request for Review of Hearing Decision/Order ("Request

---

[1] The Complaint also alleges Meier applied for Supplemental Security Income ("SSI") benefits; however, Meier's application for social security benefits does not include a request for SSI benefits. Additionally, the ALJ's decision does not mention any application for SSI benefits and the parties' briefing only refers to disability benefits—not SSI benefits. For these reasons, the court assumes Meier's allegation relating to SSI benefits was an error and shall not consider an application for SSI benefits in the instant order.

for Review") with the Social Security Administration's Appeals Council ("Appeals Council"). On June 28, 2007, the Appeals Council denied Meier's Request for Review. Thus, the ALJ's March 5, 2007 decision stands as the Commissioner's final decision.

On November 5, 2007, Meier filed the Complaint.[2] On January 4, 2008, the Commissioner filed an Answer (docket no. 7). On March 3, 2008, Meier filed a brief ("Meier's Brief") (docket no. 13). On May 2, 2008, the Commissioner filed a responsive brief (docket no. 14). The Commissioner argues the ALJ correctly denied the Application and asks the court to affirm the ALJ's decision. Meier did not file a reply.

The court finds this matter fully submitted and ready for decision.

### III. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may conduct a judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party [. . .] may obtain a review of such decision[.]"). "The court shall have the power to enter [. . .] a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." *Id.* "The findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive[.]" *Id.*

The court must consider whether "substantial evidence on the record as a whole supports the Commissioner's decision[.]" *Schultz v. Astrue*, 479 F.3d 979, 982 (8th Cir. 2007). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the ALJ's determination." *Pirtle v. Astrue*, 479 F.3d 931, 933 (8th Cir. 2007). The court reviews evidence both supporting and detracting from the Commissioner's decision. *Id.* If the ALJ's credibility determinations are

---

[2] Due to a "technological failure," Plaintiff did not file the Complaint within the time designated by the Appeals Council. Complaint at ¶ 3.C. On February 19, 2008, however, the Appeals Council granted Plaintiff an extension to allow him to file the Complaint. Order (docket no. 19-2).

"supported in the record by substantial evidence," the court must defer to them. *Id.* It shall not reverse the Commissioner's decision "simply because some evidence supports a conclusion other than that of the Commissioner." *Id.* "'[I]f it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, [the court] must affirm the [ALJ's] decision.'" *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Oberst v. Shalala*, 2 F.3d 249, 250 (8th Cir. 1993)). The court must not re-weigh the evidence, but rather simply inquire whether "a reasonable person would find [the evidence] adequate to support the ALJ's determination." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citing *Sultan v. Barnhart*, 368 F.3d 857, 862 (8th Cir. 2004)). Although inaccuracies and unresolved conflicts of evidence can serve as a basis for remand, "a 'deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case[.]'" *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (quoting *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000)).

## IV. FACTS

### A. Meier's Background

Meier was born on July 20, 1960. Meier obtained his high school diploma and completed four years of college; however, he has not received a college degree. As of the date of the Hearing, Meier lived in Cedar Rapids, Iowa.[3] He is currently single and lives with his adult brother. He is a father to three children, ages 16, 16 and 18.

### B. Subjective Complaints

Meier claims he suffers from a constant aching pain with intermittent sharp pain in his lower back, left buttock, left leg, left ankle and left foot. Meier also has pain radiating down both his legs. This pain arises from a number of back-related conditions. Meier

---

[3] At the Hearing, Meier testified that, due to financial hardship, he may be forced to move from his home. It is unclear where Meier presently resides.

suffers from this pain all day, although it is worse in the afternoon. Meier's pain has continued to worsen since the alleged onset of his disability. Meier rates his pain at an intensity of 10/10. Meier describes his pain as "intolerable" and believes he needs back surgery. Standing and walking exacerbates his pain. Meier's ability to understand and follow instructions is unaffected by his pain. However, he is only able to pay attention for an extended length of time if he ices his back. Meier tries to alleviate his pain by taking ibuprofen and undergoing periodic epidural nerve root injections ("epidurals"). Meier claims neither of these methods effectively relieve the pain. The only treatment Meier believes has effectively eased his pain is taking hot baths multiple times a day and icing his back. However, this treatment only helps until he resumes an activity. Meier feels discomfort after only ten to twenty minutes of walking, standing or sitting.

Meier's daily activities include taking hot water baths, using the computer, watching television, icing his back and preparing ice packs for his use throughout the day. If he plans to go somewhere, he takes a cooler of ice packs with him. At the time of his Application, Meier was able to clean and prepare frozen dinners, microwave dinners and sandwiches for his meals. However, at the Hearing, Meier testified his brother took care of the cooking and cleaning for him. Meier is also able to clean and do his laundry, though his brother assists him with certain household activities. He goes outside each day and is able to drive a car. He goes shopping once or twice a month for groceries and household supplies. Meier's other social activities are limited to attending his children's events. Meier has difficulty dressing himself due to his pain.

Meier spends time with his children by watching television with them when they visit. His social activities have been impacted by his pain in that he is unable to walk for any length of time, so he often has to "sit down for a spell" and take breaks. Record ("R.") at 80. Since the onset of his pain, Meier has been unable to golf, fish or camp.

Pain does not change Meier's ability to understand and follow instructions.

5

However, he is only able to pay attention for an extended length of time if he is icing his back. He is able to pay bills, count change, handle a savings account and use a checkbook. Meier is able to sleep provided he is in a certain position.

## C. Meier's Work History

Meier was employed by one or more automotive dealerships or car sales centers from 1983 until 2004 as a sales manager and car appraiser. Meier earned approximately $75,000 each year. On July 17, 2006, Meier completed his Disability Report. In the Disability Report, Meier stated his employer terminated him because it "downsized." *Id.* at 116. However, at the Hearing, Meier stated his employer terminated him due to Meier's inability to perform his job duties. Meier's attendance at work began to taper off as his pain worsened, and his condition eventually prevented him from performing his job duties. Meier also testified that his use of ice packs at work led people to make fun of him because his pants were always wet from the ice packs. Meier received unemployment compensation for six months following his termination in October of 2004.

Meier claims his condition prevents him from "work[ing] any kind of normal day." *Id.* at 95. Meier used to work eight hours each day, which required him to stand approximately eight hours and stoop, crouch, crawl and reach. This physical activity was necessary because he had to climb into and out of cars. Meier used to supervise approximately six employees and considered himself to be a "lead" worker. *Id.* at 110. Occasionally, Meier still performs an "odd job" for his former employer. *Id.* at 227.

## D. Meier's Testimony

Meier appeared at the Hearing using a walker. He testified he began using a walker roughly a year prior to the date of the Hearing because he realized his knees had started to "giv[e] out." *Id.* at 224. Meier testified he has been without "any significant relief for any length of time" from his back pain. *Id.* at 230. He stated he has not undergone the back surgery recommended to him by his treating sources because his health insurance

lapsed following his employment termination. However, he testified he recently qualified for IowaCare, a medical assistance program. After learning he qualified for IowaCare, Meier returned to see one of his physicians about the possibility of back surgery. This physician outfitted Meier with a back brace and scheduled a series of epidural injections. According to Meier, these procedures were necessary prerequisites to back surgery because they allowed Meier to note when and where he feels discomfort. He also says he was "spooked" and "scared" about the surgery. *Id.* at 230. Meier believes he "will be fine after the surgery" and "just want[s] to get fixed to get back to work." *Id.* at 234.

Meier testified he had not yet taken any pain medication that helped him feel better, but had "taken ibuprofen by the packetfuls over the years." *Id.* at 232. Meier also testified he tries to alleviate his pain by using home-made ice packs and "laying on balls." *Id.* He testified he "would do anything" to alleviate his pain. *Id.*

Meier testified that he would like to be able to go outside daily, but there are some days when he is unable to do so. He testified that when he goes shopping, his pain forces him "to lean over on the cart." *Id.* at 235.

### E. Meier's Medical History

Aside from the back-related issues giving rise to the Application, Meier's medical history is not relevant to his current condition. Accordingly, this portion of the analysis is limited to the conditions discussed in the Application.

#### 1. Treating sources

On April 28, 2004, Meier met with Dr. Chad D. Abernathy, M.D., about his back pain. Dr. Abernathy stated Meier "clinically presents with left L5 and S1 radiculopathy secondary to left L5-S1 spondylolisthesis with neuroforaminal stenosis and disc protrusion." R. at 136. Dr. Abernathy referred Meier to Dr. Loren J. Mouw, M.D, a neurosurgeon. On May 4, 2004, Meier met with Dr. Mouw. In that examination, Dr. Mouw noted Meier's radicular symptoms in his left leg "had progressed over the last 3

years." *Id.* at 138. Dr. Mouw noted Meier's "straight leg raises are negative" and that "[h]is reflexes are normal." *Id.* Dr. Mouw also noted "[r]eview of [Meier's] MRI of the lumbar spine shows a degenerative disc." *Id.* Dr. Mouw also noted a "small disc bulge" associated with the degenerative disc. *Id.* Dr. Mouw attributed Meier's pain to "a grade I spondylolisthesis at L5-S1 with foraminal narrowing." *Id.* That same day, Dr. Edwin W. Lojeski, D.O., administered an epidural to Meier at Mercy Medical Center in Cedar Rapids, Iowa, to help alleviate Meier's pain.

On October 21, 2004, shortly after losing his job, Meier went to St. Luke's emergency room in Cedar Rapids, Iowa. Meier complained of shortness of breath and dizziness, which had abated by the time he was examined. Dr. Anthony D. Carter, M.D., examined Meier and assessed his symptoms as follows: "Episode of cough with shortness of breath with wheezing [and] [t]obacco abuse." *Id.* at 155. Dr. Carter spoke to Meier "at great length" about quitting smoking. *Id.* at 155.

On May 31, 2005, Meier returned unexpectedly to Dr. Lojeski's office. Meier reported his pain had been well-controlled for six months following his epidural injection; however, he returned to see Dr. Lojeski because, "without [a] precipitating event, his pain began to increase." *Id.* at 180. Meier rated his pain at a 10/10 intensity and reported having an extension of his pain into his lower right extremity. Dr. Lojeski administered another epidural to Meier to treat his pain.

On September 2, 2005, Meier visited Dr. Sergio A. Mendoza, M.D., at the University of Iowa Hospitals and Clinics in Iowa City, Iowa. In this examination, Dr. Mendoza found Meier had "no gross abnormalities of his spine" and was "able to reverse his lumbar lordosis by bending over to touch his toes." *Id.* at 184. Dr. Mendoza noted Meier had a "good range of motion of the lumbar spine which is mildly painful," "mild tenderness to palpation of the paraspinous muscles over the sacrum" and "a negative straight leg raise." *Id.* Dr. Mendoza also stated Meier was "able to stand and walk on

[his] toes and heels." *Id.* Dr. Mendoza recommended Meier wear a brace for the next six to eight weeks, recommended epidurals to alleviate pain and discussed the possibility of surgery. However, Meier "expressed he wishe[d] to avoid surgery at all costs," so Dr. Mendoza "definitely recommended" the use of a brace and epidurals. *Id.* at 185. In a radiological consultation report that same day, Dr. J. Ahn, M.D., noted Meier's x-ray suggested degenerative disc disease. *Id.* at 187.

On October 13, 2006, more than a year after his prior appointment, Meier had another appointment with Dr. Mendoza. Dr. Mendoza noted Meier had not followed through with the recommended brace and epidurals. Dr. Mendoza observed Meier's use of a walker. Meier reported "several falls due to 'giving [a]way of [his] knees.'" *Id.* at 191. Dr. Mendoza also noted Meier had "received 3 [epidurals] with only 1 hour [of] relief." *Id.* at 191. That day, Dr. Mendoza set forth a plan for Meier, which required him to "be fitted for and wear a [. . .] brace at all times" and receive another epidural. *Id.* at 193. Dr. Mendoza stated he "informed [Meier] that the [epidural] and brace will allow further prognostic ability for surgical correction." *Id.*

On November 7, 2006, Dr. Mendoza completed a "Treating Medical Source Statement" checklist ("Checklist") that assessed Meier's functional limitations. *Id.* at 195. Dr. Mendoza found Meier: (1) was unable to sit for more than fifteen minutes before alternating his posture; (2) was required to walk after sitting for more than fifteen minutes, but could not walk more than fifteen minutes; (3) had to sit for a maximum of less than one hour during an eight-hour work day; (4) had to stand or walk no less than fifteen minutes at a time, then lie down or recline for at least fifteen minutes; (5) had to stand or walk for a total time of less than one hour in an eight-hour work day; and (6) had to recline or lie down for at least four hours in an eight-hour work day. Dr. Mendoza concluded Meier's pain allowed Meier to sit only for a total of one hour and stand for one hour. For the remaining six hours in an eight-hour work day, Meier was to lie down or recline. Dr.

Mendoza also found Meier was unable to balance, stoop or use his hands and arms for reaching. On December 4, 2006, Meier received another epidural.

On April 18, 2007, Meier returned to see Dr. Mendoza. Meier indicated he wanted to have the surgery but preferred "to weigh his options and delay it if possible at [that] time." *Id.* at 213. Meier was wearing his brace, which provided him with some relief, although his pain was still severe. Meier received another epidural.

On May 9, 2007, Meier had another appointment with Dr. Mendoza. Meier did not report any change in condition at that time. Dr. Mendoza observed Meier's ambulation with a walker, noting he "moans and grunts as he maneuvers, and appears [to be] in significant pain upon any motion." *Id.* at 210. Dr. Mendoza stated "full recovery is going to be very difficult, given the current nature of the problem as well as the deconditioning and psychological wear that the current pain has had on [Meier]." *Id.* Dr. Mendoza indicated he wanted Meier to consult a cognitive behavioral therapist in conjunction with his surgery "to help increase [his] healing success rate." *Id.* Meier indicated his willingness to do so, as well as his willingness to quit smoking.

The surgery Dr. Mendoza recommended "would include a 360 degree fusion at L5-S1 and require a hospital stay of approximately 4-5 days. Post-operative recovery is likely to be 4-6 weeks of significant activity restrictions followed by 4-6 months of further healing time." *Id.* at 211.

### 2. *Non-treating sources*

On February 9, 2005, at the request of the Iowa Disability Determination Services ("DDS"), Dr. Robert J. Schultes, M.D., a geriatricist, wrote a letter to DDS summarizing Meier's physical capabilities as follows:

> He can lift 10-20 pounds, ½ hour per day. He can carry 10-20 pounds for 15 minutes per day. He can stand 2 hours per day. He can move about 2 hours per day. He can walk 2 blocks per day. He can sit 2 hours per day. He can stoop ½ hour per day. He cannot do any climbing or kneeling. He can

> crawl ½ hour per day. He can handle objects and see, hear, and speak 8 hours per day. He can travel 3 hours per day. He has no problems with dust, fumes, temperatures, or other hazards.

*Id.* at 159. Dr. Schultes also examined Meier and diagnosed him with "[c]hronic low back pain due to lumbar radiculopathy secondary to spondylolisthesis and foraminal narrowing with left lower extremity weakness." *Id.* at 160. On May 23, 2005, Dr. J.D. Wilson, M.D., another DDS medical consultant, reviewed Meier's medical history. Dr. Wilson acknowledged the diagnoses of Dr. Abernathy and Dr. Schultes and found their opinions to be consistent with his own findings.

### F. Vocational Expert's Testimony

Ms. Jacobs testified as a vocational expert at the Hearing. Meier did not object to Ms. Jacobs's qualification as a vocational expert. When posing a hypothetical question to Ms. Jacobs, the ALJ set forth the following RFC ("Residual Functional Capacity"):

> limit lifting to 20 pounds occasionally and ten frequently. Stand and sit six hours each in an eight-hour work day. The non-exertional physical limits would provide for no kneeling and rest occasional. Stair, ladder climbing, balance, stoop, crouch and crawl.

*Id.* at 238. Ms. Jacobs testified a person with this RFC could perform past relevant work "as an auto appraiser and also as an auto sales manager." *Id.*

The ALJ posed the following second hypothetical to Ms. Jacobs:

> lifting to ten pounds occasional and five frequently, stand two hours in an eight-hour work day, sit for six, standing and sitting limited to 30 minutes each with a slight positional change. No ladder climbing, kneeling, crouching or crawling. Occasional stair climbing, balance and stoop. Occasional exposure to extremes of cold and humidity and wetness.

R. at 240. Ms. Jacobs testified a person with this RFC could not perform past relevant work as an auto appraiser or auto sales manager. However, Ms. Jacobs testified a person

with this RFC could perform the following sedentary work: information clerking, telemarketing and surveillance system monitoring.

## V. ALJ'S DECISION

The ALJ determined Meier is not disabled. In determining whether a claimant is disabled, the ALJ must complete a five-step evaluation. *See* 20 C.F.R. § 404.1520(a)–(f) (2008); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps are:

> (1) If the claimant is engaged in substantial gainful activity, disability benefits are denied.
>
> (2) If the claimant is not engaged in substantial gainful activity, her medical condition is evaluated to determine whether her impairment, or combination of impairments, is medically severe. If the impairment is not severe, benefits are denied.
>
> (3) If the impairment is severe, it is compared with the listed impairments the Secretary acknowledges as precluding substantial gainful activity. If the impairment is equivalent to one of the listed impairments, the claimant is disabled.
>
> (4) If there is no conclusive determination of severe impairment, then the Secretary determines whether the claimant is prevented from performing the work she performed in the past. If the claimant is able to perform her previous work, she is not disabled.
>
> (5) If the claimant cannot do her previous work, the Secretary must determine whether she is able to perform other work in the national economy given her age, education, and work experience.

*Trenary v. Bowen*, 898 F.2d 1361, 1364 n.3 (8th Cir. 1990) (citing *Yuckert*, 482 U.S. at 140–42); *see also* 20 C.F.R. § 404.1520(a)–(f).

In the first four steps, Meier has the burden of proving his disability and RFC. *Goff*

*v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). If he meets this burden, the burden of production then shifts to the Commissioner to prove the claimant retains the RFC to perform other work in the national and regional economy. *Charles v. Barnhart*, 375 F.3d 777, 782 n.5 (8th Cir. 2004). The RFC is the most an individual can do despite his or her limitations. 20 C.F.R. § 416.945(a)(1). "'It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own descriptions of his limitations.'" *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001)). If the claimant cannot make an adjustment to other work existing in significant numbers in the national economy, then the ALJ will find the claimant is disabled. 20 C.F.R. § 404.1520(g)(1). At step five, even though the burden of production shifts to the Commissioner, the burden of persuasion remains on the claimant. *Goff*, 421 F.3d at 790.

At the first step of the analysis, the ALJ determined Meier had not engaged in substantial gainful activity since his alleged onset of disability. At the second step, the ALJ found Meier had a severe impairment of "degenerative disc disease of the lumbar spine." R. at 20. At the third step, however, the ALJ determined Meier did not present evidence showing "an impairment or combination of impairments that meets or medically equals one of the listed impairments" in the applicable regulations. *Id.* At the fourth step, the ALJ determined Meier had the following RFC:

> lift 10 pounds occasionally and 5 pounds frequently; stand 30 minutes at a time and 2 hours in an 8 hour work day; sit 30 minutes at a time and 6 hours in an 8 hour work day; occasionally climb stairs, balance, and stoop; occasionally work in areas of cold, humidity, and wetness; and avoid climbing ladders, kneeling, crouching, and crawling.

*Id.* at 21. In forming Meier's RFC, the ALJ discredited Dr. Mendoza's opinions in the

Checklist because they were unsupported by other record evidence. However, the ALJ gave some weight to this opinion to the extent "part of the restrictions have been incorporated into the [RFC] conclusion[.]" R. at 24.

The ALJ found the second hypothetical he posed to Ms. Jacobs most accurately reflected Meier's RFC and concluded Meier would be unable to perform his past relevant work. Then, the ALJ proceeded to step 5 to determine whether Meier could perform other work in the national economy. The ALJ concluded that Meier "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy," and could, with his existing RFC, work as an information clerk, data telemarketer and surveillance system monitor. *Id.* at 26. Accordingly, the ALJ concluded "a finding of 'not disabled' is appropriate." *Id.*

## VI. MEIER'S OBJECTIONS

Meier claims the ALJ erred by: (1) finding Meier is not disabled; (2) improperly determining Meier's credibility in forming his RFC; (3) failing to consider all opinions of Meier's treating sources; (4) improperly weighing the opinions of Meier's nontreating medical sources; and (5) improperly describing Meier's past relevant work.

### A. Determination of Disability

The ALJ found Meier did not have an impairment or combination of impairments qualifying him for a presumption of disability under 20 C.F.R. Part 404, Subpart P, Appendix 1.04 ("Listing 1.04"). Meier argues this finding is incorrect because there is substantial evidence showing Meier satisfies the criteria for a presumption of disability under Listing 1.04. Meier argues he qualifies as disabled under Listings 1.04(A) and (C), which define musculoskeletal spinal impairments as:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

* * *

C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P. App'x 1.04(A) & (C).

In order for a claimant to satisfy a listing for an impairment, a claimant must show that his condition meets *all* criteria in such a listing. *Deckard v. Apfel*, 213 F.3d 996, 997 (8th Cir. 2000) (citing *Marciniak v. Shalala*, 49 F.3d 1350, 1353 (8th Cir. 1995)). The parties do not dispute Meier satisfies the first requirement of Listing 1.04, because the ALJ found Meier has degenerative disc disease. The parties' dispute arises over whether Meier satisfied subparts A or C of Listing 1.04. Meier argues the evidence shows he satisfies these criteria, and the Commissioner argues it does not. The court explores whether Meier satisfies Listings 1.04(A) or 1.04(C), in turn.

### 1.  *Listing 1.04(A)*

Meier does not satisfy Listing 1.04(A), which requires evidence of "limitation of motion of the spine, motor loss [. . .] accompanied by sensory or reflex loss and [. . .] positive straight-leg raising test." 20 C.F.R. Pt. 404, Subpt. P. App. 1.04(A). Meier simply has no evidence showing he has a "positive straight-leg raising test" or "sensory or reflex loss," which is evidence required to show "nerve root compression" in Listing

1.04(A).  Indeed, Meier's medical records show he had "negative" leg-raising tests. Without this evidence, Meier cannot satisfy Listing 1.04A.  *Deckard*, 213 F.3d at 997.

### 2.    Listing 1.04(C)

Listing 1.04(C) requires evidence of "[l]umbar stenosis resulting in pseudoclaudication [. . .] manifested chronic nonradicular pain and weakening, and resulting in an ability to ambulate effectively[.]" 20 C.F.R. Pt. 404, Subpt. P. App. 1.04(C).  There is no medical or testimonial evidence showing Meier's lumbar stenosis resulted in pseudoclaudication.  The record citations Meier claims support a 1.04(C) Listing merely discuss Meier's spinal or lumbar stenosis.  While such a diagnosis is a component of Listing 1.04(C), by itself, it is not sufficient.  Without any record evidence showing Meier's lumbar stenosis resulted in pseudoclaudication, or any equivalent thereof, Meier cannot satisfy Listing 1.04(C).[4]  *Deckard*, 213 F.3d at 997.

Meier does not argue he satisfies any other listing conferring "disabled" status. While the court recognizes the record evidence demonstrates Meier suffers from pain, the record does contain evidence sufficient to determine Meier meets any listing qualifying him as disabled.  Accordingly, the court finds substantial evidence on the record as a whole supports the ALJ's finding that Meier is not disabled.

### 3.    ALJ's failure to discuss Listings 1.04(A) and (C)

Meier takes issue with the ALJ's failure to discuss Listings 1.04(A) and (C).  Meier argues, if there is an insufficiency of record evidence to support the application of Listing 1.04(A) or (C), "then it was incumbent upon the ALJ to discuss the insufficiencies so that a reviewing body could determine whether there is substantial evidence to support that determination and if the correct legal principles were applied."  Meier's Brief at 8 (citing

---

[4]  The parties devote substantial analysis to whether Meier can "ambulate effectively," as defined in 20 C.F.R. Part 404, Subpart P, Appendix 1.04(C).  Because the court finds no record evidence of pseudoclaudication, the court need not address this issue.

*Cook v. Heckler*, 783 F.2d 1168 (4th Cir. 1986)). The Eighth Circuit Court of Appeals holds otherwise: "Although it is preferable that ALJs address a specific listing, failure to do so is not reversible error if the record supports the overall conclusion[.]" *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003) (citing *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001)). As set forth above, the court finds substantial evidence on the record as a whole supports the ALJ's finding that Meier is not disabled, since no evidence shows Meier meets or satisfies any listed impairments. Therefore, the ALJ's failure to specifically discuss Listings 1.04(A) and (C) does not constitute error.

## B. Determination of Meier's RFC

Meier argues there is insufficient evidence to support the ALJ's determination of Meier's RFC. Meier takes issue with the ALJ's characterization of certain evidence and the ALJ's finding that Meier is not entirely credible.

"It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and [a] claimant's own descriptions of his [or her] limitations." *Pearsall*, 274 F.3d at 1217 (8th Cir. 2001) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). An ALJ must consider a claimant's subjective complaints of pain in conformity with the standard adopted in *Polaski v. Heckler*, 739 F.2d 1320, 1321-22 (8th Cir. 1984). *Id.* at 1218.

*Polaski* provides an ALJ may not discount a claimant's subjective complaints of pain *solely* because no objective medical evidence exists to support it. *Polaski*, 739 F.2d at 1322; *see also* 20 C.F.R. § 404.1529(c)(2) (stating claimant's subjective allegations of pain will not be rejected "solely because the available objective medical evidence does not substantiate [claimant's] statements"). Instead, the ALJ

> must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

1. the claimant's daily activities;
2. the duration, frequency and intensity of the pain;
3. precipitating and aggravating factors;
4. dosage, effectiveness and side effects of medication;
5. functional restrictions.

*Polaski*, 739 F.2d at 1322. "If the ALJ discredits a claimant's credibility and gives a good reason for doing so, [the court] will defer to [his or her] judgment even if every factor is not discussed in depth." *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)). Before an ALJ may discount a claimant's subjective allegations of pain, "the ALJ must make express credibility determinations and set forth the inconsistencies in the record that lead the ALJ to reject the claimant's complaints of pain." *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988). In order to properly discredit a claimant's allegations, the ALJ's "credibility determinations must be supported by substantial evidence." *Id.* (citing *Hardin v. Heckler*, 795 F.2d 674, 676 (8th Cir. 1986)).

### 1. Undisputed inconsistencies in record

In finding Meier's subjective complaints were not credible, the ALJ identified a number of inconsistencies between Meier's testimony, medical evidence and the Application. First, the ALJ noted a discrepancy in Meier's explanation for his termination from employment. In the Application, Meier stated his discharge was due to his employer's downsizing, but at the Hearing, Meier testifed he was laid off because his pain rendered him unable to perform his job duties. Second, Meier testified he had collected unemployment insurance for six months following his termination. Third, the ALJ noted Dr. Mendoza asked Meier to return for a follow-up visit six to eight weeks following his September 2, 2005 appointment. However, Meier did not return until October 2006—more than one year later. At that time, Dr. Mendoza noted Meier had not complied with his treatment plan, which included wearing a back brace and undergoing epidurals to

treat pain. Fourth, the ALJ noted Meier alleged he was able to enjoy only a limited number of physical activities due to severe functional limitiations; however, Meier told Dr. Mendoza he lived near his children and was "actively involved in their lives, including attending sporting events." R. at 23. Fourth, the ALJ found the Checklist completed on November 7, 2006 by Dr. Mendoza was unsupported by and inconsistent with certain clinical exhibits. The ALJ found fault with what he believed to be Dr. Mendoza's reliance "on the subjective report of symptoms and limitations provided by the claimant," and providing an opinion on mental limitations resting "at least in part[] on an assessment of impairments outside the area of his expertise." *Id.* at 24.

The ALJ concluded Meier's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." R. at 24. The ALJ found these statements lacked credibility because,

> [a]t one point or another in the record, either in forms completed in connection with the Application, in medical reports, or in testimony, the claimant reported daily activities including preparing simple meals, performing light household chores, using a computer, and attending sporting events, which are not limited to the extent one would expect given the complaints of disabling symptoms and limitations.

*Id.* The ALJ also noted "gaps in [Meier's] history of treatment, particularly evidence between September [of] 2005 and October [of] 2006," Meier's failure to "follow-up on treatment recommendations," which "suggest[] symptoms may not have been as serious as alleged." *Id.* The ALJ also noted Meier had "used Ibuprofen and no other narcotic[-]based pain medication." *Id.* at 24.

Aside from general complaints with the manner in which the ALJ characterized the evidence pertaining to Meier's subjective complaints, Meier only substantively disputes the ALJ's conclusion relating to Meier's daily activities and use of pain medication. Meier

does not dispute the ALJ's other findings that negatively impact his credibility. For instance, Meier does not dispute his failure to follow his physician's advice to wear a back brace and undergo epidurals, which weighs against Meier's credibility. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) *(*"A failure to follow a recommended course of treatment [. . .] weighs against a claimant's credibility.") (citing *Gowell v. Apfel*, 242 F.3d 793, 797 (8th Cir. 2001)). Similarly, Meier's one-year gap in treatment during his alleged period of disability discredits his allegation of disabling pain. *See Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995) ("[T]he failure to seek medical treatment for such a long time during a claimed period of disability tends to indicate tolerable pain[.]"). Meier's application for unemployment compensation following the alleged date of onset of disability also weighs against his credibility. A claim for unemployment compensation adversely affects a claimant's credibility because an applicant for disability compensation "must hold himself out as available, willing and able to work." *Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991). This contravenes a claimant's allegation that he or she is unable to work due to a disabling condition. *Id.* Internal evidentiary inconsistencies expressly noted by the ALJ, such as Meier's discrepancy in the reason for his termination from employment, also detract from his credibility. *Rautio*, 862 F.2d at 179. When taken together, all of these factors weigh against a finding of Meier's credibility. Based on these uncontested inconsistencies alone, the court finds there is substantial evidence to support the ALJ's determination that Meier's subjective complaints of pain are not credible.

### 2. *Meier's substantive dispute with the ALJ's credibility findings*

Meier's only substantive dispute with the ALJ's credibility finding relates to Meier's daily activities and use of pain medications, other *Polaski* factors considered by the ALJ. *Polaski*, 739 F.2d at 1322. First, Meier argues his ability to heat food, visit relatives and watch television are not the type of activities the Eighth Circuit Court of Appeals has held to be "substantial evidence of the ability to do full-time work." Meier's Brief at 10 (citing

*Rainey v. Dep't of Health & Human Servs.*, 48 F.3d 292, 293 (8th Cir. 1995) (holding heating canned food, watching television and doing dishes are not consistent with "evidence of the ability to do full-time competitive work")). This may be true; however, even though a claimant's activities themselves may not rise to the level of a substantial gainful activity, the ALJ may find them inconsistent with allegations of disabling pain. *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (holding activities such as driving children and wife to work or school, shopping, visiting family, watching television and playing cards are not activities consistent with subjective allegations of pain). The court finds the ALJ's credibility determination relating to Meier's daily activities is supported by substantial record evidence. Even if the court found Meier's daily activities consistent with his allegations of disabling pain, the other discrepancies noted by the ALJ and discussed above demonstrate there is substantial record evidence to support the ALJ's finding that Meier's subjective complaints of pain are not credible.

Second, Meier disputes the ALJ's finding as to his use of narcotics. The ALJ found the fact Meier did not use narcotic pain medication weighed against his credibility. Meier argues that, in his testimony, he stated Dr. Mendoza advised him to refrain from taking any strong pain medicine, so this factor should not be held against him. The court recognizes the ALJ may have misapplied this *Polaski* factor in his decision; however, as stated above, the court finds there are numerous other independent *Polaski* factors weighing against a finding of Meier's credibility as to his subjective allegations of disabling pain. Therefore, even if the ALJ misapplied this *Polaski* factor, it would not impact the court's conclusion that the ALJ's determination of Meier's credibility and RFC is supported by substantial record evidence. At best, Meier's objection creates one of two possible inconsistent positions one may draw from the evidence. Because one of these positions represents the ALJ's findings, the court must affirm the ALJ's decision. *Roe*, 92 F.3d 672, 675 (8th Cir. 1996).

## C. Consideration of Meier's Treating Sources

Meier argues the ALJ improperly discredited the opinions of one of his treating physicians, Dr. Mendoza. The social security regulations "provide that a treating physician's opinion regarding an applicant's impairment will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 401.1527(d)(2)). "[A] treating physician's opinion is normally entitled to great weight," but "such an opinion does not automatically control, since the record must be evaluated as a whole." *Id.* at 1013 (internal quotation marks and citations omitted). Accordingly, a court may "uph[o]ld an ALJ's decision to discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* (internal quotation marks and citations omitted.) The ALJ "must 'always give good reasons'" for allocating a certain weight to a treating physician's opinion. *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)).

Contrary to Meier's assertions, the ALJ did not discredit Dr. Mendoza's opinion in its entirety. Rather, the ALJ only specifically discredited a small part of Dr. Mendoza's opinions—the Checklist. The ALJ found the Checklist was unsupported by Dr. Mendoza's examinations of Meier on September 2, 2005 and on October 13, 2006. In his discussion of Dr. Mendoza's opinion, the ALJ stated:

> the opinion of [Dr. Mendoza] is without substantial support from other evidence of record which renders it less persuasive. Additionally, the opinion is not supported by findings of physical examination. Yet, some weight is given to the opinion as a part of the restrictions have been incorporated into the [RFC] conclusion reached by [the ALJ].

R. at 24.

When Dr. Mendoza examined Meier on September 2, 2005, he noted Meier had "no gross abnormalities of his spine," was able to "reverse his lumbar lordosis by bending over to touch his toes," had a "good range of motion of the lumbar spine which [was] mildly painful," "mild tenderness to palpation of the paraspinous muscles over the sacrum," a "negative straight leg raise" and was "able to stand and walk on [his] toes and heels." R. at 184. Dr. Mendoza next examined Meier on October 13, 2006. At that time, Dr. Mendoza noted Meier had "normal trunk flexion with pain in extension," was "unable to stand on [his] toes but [was] able to stand on [his] heels for [a] short time," had pain "with palpation to bilateral trochanteric bursa, glut med muscle belly and tendon with [r]ight side greater than left" and "[p]ain with palpation to [the] sacral base." R. at 192-93.

In contrast, Dr. Mendoza's Checklist conclusions are: (1) Meier cannot sit more than fifteen minutes at a time or sit for more than a cumulative period of one hour in an eight-hour work day; (2) Meier cannot stand or walk more than fifteen minutes at a time or stand or walk more than a cumulative total of one hour in an eight-hour work day; (3) Meier must lie down or recline in a supine position for at least four cumulative hours in an eight-hour work day; and (4) Meier cannot balance, stoop, or reach.

The court agrees with the ALJ's finding that the Checklist is unsupported by Dr. Mendoza's prior examiniations of Meier. While Dr. Mendoza's examinations indicate Plaintiff suffers from some limitations, medical records from September of 2004 and October of 2006 simply do not support the severe limitations set forth in the Checklist. *See Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (stating treating physician's finding of claimant's limitations that "stand alone" and were not previously mentioned in that treating source's records could be discounted by ALJ).

The court also finds the ALJ's other findings as to the Checklist are supported by the record. The ALJ noted that, at the time Dr. Mendoza completed the Checklist, his

treatment history with Meier "was quite brief, including only two visits," and Dr. Mendoza "seemed to rely quite heavily on the subjective report of symptoms and limitations provided by [Meier]." R. at 24. The ALJ also noted the Checklist "provided an opinion with respect to mental limitations without providing findings upon which the assessment was made and his opinion appears to rest, at least in part, on an assessment of impairments outside the area of his expertise." R. at 24. The court finds these additional conclusions are supported by substantial record evidence, and Meier does not dispute them.

For the foregoing reasons, the court finds the ALJ's consideration of Meier's treating sources is supported by substantial record evidence.

### D. Consideration of Dr. Schultes's Opinion

Meier argues the ALJ erred in relying on the opinions of the DDS physician, Dr. Schultes. An ALJ "*will* consider opinions of State agency medical or psychological consultants[.]" 20 C.F.R. § 404.1527(f)(2) (emphasis added). Although an ALJ is "not bound by any findings made by State agency medical [. . .] consultants," an ALJ must consider such findings "as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." *Id.* § 404.1527(f)(2)(i). Additionally, an ALJ's consideration of a state medical consultant requires evaluation of the consultant's "medical specialty and expertise in [social security] rules, the supporting evidence in the case record, supporting explanations provided by the physician [. . .], and any other factors relevant to the weighing of the opinions." *Id.* § 404.1527(f)(2)(ii). If the ALJ does not give a claimant's treating source controlling weight, "the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical [. . .] consultant[.]" *Id.*

In his discussion of Dr. Schultes's opinion, the ALJ states he "considered the administrative findings of fact made by State Agency medical physicians and other

consultants. The opinions are weighed as statements from non-examining expert sources." R. at 24. Meier objects to the ALJ's finding, claiming the ALJ "relied entirely upon the non-treating, non-examining" opinion of Dr. Schultes. Meier's Brief at 13. Without explanation, Meier argues the ALJ gave Dr. Schultes's opinion "controlling weight." *Id.* Meier misrepresents the record—nothing indicates the ALJ gave Dr. Schultes's opinion exclusive or controlling weight. The plain language of the ALJ's decision indicates the ALJ considered and extensively relied on Meier's treating sources, including Dr. Abernathy, Dr. Lojeski, Dr. Mouw, Dr. Carter and Dr. Mendoza, in part, in rendering his decision. Meier also argues the ALJ should have refrained from giving Dr. Schultes's opinion any weight at all. This unsupported argument contradicts the mandate requiring an ALJ to consider a State agency physician's opinion in rendering a decision. 20 C.F.R. § 404.1527(f)(2). Meier's objection to the ALJ's consideration of Dr. Schultes's opinion is entirely without merit.

### E. Past Relevant Work

Meier objects to the ALJ's finding relating to his past relevant work. The ALJ found Meier had past relevant work as "a truck driver, cutting machine operator and security guard." R. at 25. Meier argues this is an erroneous finding because he never worked in any of these occupations. The court agrees the ALJ erroneously listed Meier's past relevant work in this part of his decision. However, despite this error, the ALJ found in Meier's favor on this issue. That is, the ALJ found Meier was unable to perform his past relevant work. Meier does not object to this favorable conclusion—he only objects to the description of his past relevant work. The ALJ's error does not have any practical effect on the outcome of the case and is not a basis to reverse the ALJ's decision. *See, e.g., Lind v. Comm'r of Social Sec.*, 07CV1395-LAB, 2008 WL 4370017 at *18 (S.D. Cal. Sept. 24, 2008) (holding "inaccurate reference by the ALJ regarding [p]laintiff's past relevant work as a 'parts order clerk' constitutes harmless error" because record evidence

supported ALJ's conclusion that the plaintiff had the requisite RFC to perform his past relevant work); *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988) (holding ALJ's error in classifying claimant's past relevant work as "light" was harmless, because the ALJ found claimant was able to perform other light work and was thereofore not disabled). *Draper*, 425 F.3d at 1130 ("a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case[.]").

The court also notes the ALJ properly identified Meier's past relevant work later in his decision; when discussing Ms. Jacobs's testimony, the ALJ stated: "The vocational expert testified [Meier]'s past relevant work as an auto sales manager was skilled with a specific vocational preparation (SVP) code of 6 and his work as an auto appraiser was skilled with a SVP code of 7. The jobs required communication skills." *Id.* Additionally, at the Hearing, the ALJ referenced an exhibit properly identifying Meier's past relevant work. R. at 124 & 238.

Accordingly, the court finds the ALJ's decision relating to Meier's ability to perform past relevant work is supported by substantial evidence.

### VII. DISPOSITION

For the foregoing reasons, **IT IS ORDERED** the determination of the ALJ is **AFFIRMED** and the Complaint (docket no. 4) is **DISMISSED**.

**IT IS SO ORDERED.**

**DATED** this 27th day of October, 2008.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA